# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5291-17T3
              A-5812-17T3

A.D.,

       Plaintiff-Appellant/
       Cross-Respondent,

v.

N.D.,

       Defendant-Respondent/
       Cross-Appellant.

_____

Submitted June 5, 2019 – Decided August 1, 2019

Before Judges Accurso and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket Nos. FV-12-1914-18 and FM-12-1244-16.

Dwyer, Bachman, Newman & Solop, LLC, attorneys for appellant in A-5291-17 and appellant/cross-respondent in A-5812-17 (Howard A. Bachman, of counsel and on the briefs; Lauren Conway, on the briefs).

Shane & White, LLC, attorneys for respondent in A-5291-17 and respondent/cross-appellant in A-5812-17 (Kenneth A. White and Lauren A. Miceli, of counsel and on the briefs; Gavin G. Madigan, on the briefs).

PER CURIAM

In these back-to-back appeals, consolidated in this opinion because they involve the common issue of plaintiff's domestic violence allegations, plaintiff A.D.[1] appeals from the trial judge's June 11, 2018 order dismissing the temporary restraining order (TRO) she obtained against defendant N.D. and from the same judge's order denying her June 15, 2018 motion to reconsider a parenting-time provision of the May 25, 2018 dual judgment of divorce (DJOD) entered after a thirteen-day trial before the judge.[2]  Defendant cross-appeals from that portion of the judge's order denying his application for attorney's fees in connection with the reconsideration motion.  We affirm.

## I

Plaintiff obtained a TRO after defendant appeared at her residence five days after the DJOD was entered – a Friday – to pick up the parties' son, Gideon,

---

[1]  We use the parties' initials and a pseudonym for their son to protect their privacy.  No disrespect is intended.

[2]  Plaintiff did not appeal from the DJOD.

born September 1, 2014, pursuant to paragraph 8 of the DJOD which allowed him parenting time on alternate weekends commencing on Fridays at 6:00 p.m. Although paragraph 9 of the DJOD required plaintiff to bring Gideon to defendant at the commencement of all parenting time,[3] plaintiff had not delivered Gideon prompting defendant to travel to plaintiff's residence. The TRO was based on plaintiff's allegations that defendant committed the predicate acts of criminal trespass, N.J.S.A. 2C:18-3, and harassment, N.J.S.A. 2C:33-4.

The judge conducted a hearing at which the parties and plaintiff's uncle, who was present during the incident, testified; the judge also considered video evidence submitted by each party. The judge, consistent with our opinion in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), considered the two-prong standard that must be met before a final restraining order (FRO) is granted: "whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred," id. at 125, and whether a restraining order is required to protect the party seeking restraints from future acts or threats of violence, id. at 126-27.

---

[3] Defendant was ordered to return Gideon to plaintiff or Gideon's school after parenting time.

A-5291-17T3

In an oral decision, amplified by the judge's letter fifteen days later, R. 2:5-1(b), he determined defendant committed the predicate act of criminal trespass by placing his foot and elbow inside the threshold of plaintiff's doorway, knowing he was not authorized to enter the residence. The judge did not find from his review of the video evidence of the incident that the allegations in the TRO – that defendant "barged in the front door, knocking down plaintiff's mother" – were supported by the evidence. Nor did the judge find that defendant had a purpose to harass.

The judge, however, did not find plaintiff satisfied Silver's second prong. Plaintiff argues the trial judge erred by determining a final restraining order (FRO) was not required to protect plaintiff from future acts or threats of domestic violence. She contends there was ample evidence that an FRO was necessary but the judge failed to abide by N.J.S.A. 2C:25-29(a) which requires a court hearing a complaint alleging domestic violence to consider:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a)(1)-(6); Silver, 387 N.J. Super. at 127.]

Specifically, plaintiff argues the judge did not properly consider "various incidents of domestic violence suffered by the [p]laintiff at the hands of the [d]efendant" despite the judge's familiarity with "the history of domestic violence between the parties as it had presided over the matrimonial trial." She adds the judge failed to give "due consideration" to the impact that the contact between the parties occasioned from her required drop-off – "which may inevitably be a source of conflict" – would have on Gideon's best interests. Finally, she contends "the trial court seemingly contradicted itself by including civil restraints in the DJOD . . . and then making a finding approximately two . . . weeks later that the [p]laintiff is not in need of protection during the [FRO] hearing."

When reviewing "a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429

N.J. Super. 592, 596 (App. Div. 2013). We do not disturb the "factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interest of justice." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate when the evidence is testimonial and involves credibility issues because the judge who observes the witnesses and hears the testimony has perspective the reviewing court does not enjoy. Pascale v. Pascale, 113 N.J. 20, 33 (1988); see also State v. S.S., 229 N.J. 360, 374-81 (2017) (clarifying the deferential and limited scope of appellate review of factual findings based on video evidence). We also review findings of the Family Part with particular deference in light of its "special expertise in the field of domestic relations." Cesare, 154 N.J. at 412-13.

In finding that a FRO was not necessary to protect plaintiff from further violence, the judge recounted the parties' testimony both during the FRO hearing and the matrimonial trial. The judge echoed the credibility findings that he made during the matrimonial trial: "It was clear to this [c]ourt during that divorce trial that the plaintiff greatly exaggerate[ed] the alleged history of domestic

violence, no doubt thinking that if the [c]ourt accepted it then the [c]ourt would adopt her overly restrictive view on custody and parenting time. He nevertheless recognized that defendant admitted to a joint custody expert that he once struck plaintiff. Thus the judge found that "both parties would say or do just about anything" to prevail over the other party, and that "when it came to credibility on a myriad of issues in the divorce trial, the [c]ourt's choice was ostensibly between bad and worse." He concluded, "Unfortunately, after presiding over this [FRO] hearing for several hours today not much has changed."

The judge, after assessing the credibility of plaintiff and her uncle's testimony about the incident at plaintiff's residence, concluded defendant's "single act of criminal trespass unaccompanied by violence or threat of violence" – rejecting plaintiff's allegations to the contrary – did not warrant issuance of an FRO. Addressing the prior history of domestic violence, he found "there was some prior history . . . though not remotely to the level ascribed by the plaintiff."

The judge viewed the video evidence from which he determined that although defendant exercised "bad judgment by engaging in self-help (by going to plaintiff's residence upon her non-compliance with the [DJOD parenting-time provision] and by having what appeared to be an elbow and a foot in the door

A-5291-17T3

after [plaintiff's] uncle[4] opened the door), were not hostile in any way." The judge perceived that defendant "did not yell; . . . did not force his way into the home; and . . . made no effort to see or speak to plaintiff."

And the judge recognized that during the incident there was, what he believed, "the child crying in the background." He was vexed that the parties did not adhere to the DJOD parenting-time provisions entered five days prior. The judge was fully aware of the DJOD's shared pick-up and drop-off provision and that, despite a mutual no-contact provision carried over from civil restraints entered prior to the DJOD, the parties would be required to have "passing" contact with each other during exchanges. Yet he stressed the DJOD provisions for a parent coordinator and the parties' option to use third-parties to effectuate pick-up and drop-off[5] when he laid any failure to consider Gideon's best interests at the parties' feet:

> But for all that the parties testified at the trial about the child's best interest and how they care so much about his advancement, I believe those words are very hollow. Because at the end of the day we're heading down a road where pickup and drop-off will be

---

[4]  The amplified decision describes "defendant's uncle" opening the door – an obvious misstatement.

[5]  We discuss the DJOD's pick-up and drop-off and restraint provisions in greater detail in connection with plaintiff's appeal of the reconsideration denial because her arguments in that matter are more direct than in this one.

at the police station. So when the child is done getting this fantastic education, he can then go tell his friends that he's going to meet mommy and he's going to meet daddy at the police station. And if you both don't think that that's going to have a negative effect on your child, no matter what kind of education you give that child, you're both completely delusional.

It's time to grow up. It's over. You had [thirteen] days of trial, it's over. Co-parent. I appointed a parenting coordinator because you need one. I told you both and I directed that you both undergo counseling because you both need it. The past four to five hours is further evidence of that. And if the record would suggest that the [c]ourt is upset, the [c]ourt is upset. Because days and days and days were spent on the best interests of the child, and as far as this [c]ourt is concerned, it has great reservations whether either one of you really value the child's best interests.

Applying our standard of review, we are satisfied the judge fully considered the applicable N.J.S.A. 2C:25-29(a) factors and correctly determined plaintiff failed to prove that a restraining order was necessary to prevent future violence or threats. We reject plaintiff's claim that the judge's findings of fact were unsupported by credible and substantial evidence. Plaintiff's contentions are based on the judge's decision not to accept her version of events. The judge's careful and thorough credibility findings and factual determinations – as set forth in his oral decision and his amplification – were grounded in the testimony and video evidence, as well as the inferences he properly drew from the evidence

9

he found credible.  We therefore will not disturb his conclusion that there were insufficient proofs to justify a FRO and dismissal of the TRO was warranted.

II

After the judge denied the FRO, plaintiff moved for reconsideration of paragraph 9 of the DJOD which provides:

> The plaintiff shall bring the child to the defendant at the commencement of all his parenting time herein and defendant shall return the child to plaintiff or school as noted herein at the end of all his parenting time herein. Either party can utilize a nanny or similar child care provider they employ during their parenting time (if defendant chooses to hire one)[6] or any family member to help effectuate the pick up or drop off.

Another paragraph provided defendant with parenting time on alternate weekends from Friday at 6:00 p.m. until Monday at 8:00 a.m. and every Wednesday from 6:00 p.m. until Thursday at 8:00 a.m.

Plaintiff contests the judge's denial of that motion, arguing the judge abused his discretion by basing his decision on a palpably incorrect basis by failing "to consider significant and competent evidence, including the history of domestic violence between the parties, the civil restraints which were continued pursuant to the DJOD, the impracticalities of utilizing third-parties to conduct

---

[6]  Plaintiff already employed a child-care provider.

exchanges, and the [p]laintiff's work schedule" in requiring plaintiff to drop-off Gideon at defendant's residence.

We review the denial of a motion for reconsideration for an abuse of discretion. Cummings v. Bahr, 295 N.J Super. 374, 389 (App. Div. 1996). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). Reconsideration is appropriate if "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Cummings, 295 N.J Super. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)); see also Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002).

The judge reiterated his credibility findings at the matrimonial trial regarding plaintiff's "exaggerated" allegations of domestic violence "seemingly to 'buttress her rigid positions on parenting time,'" recognizing Judge (later Justice) Long's admonition that improper use of the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35, could have a "secondary

negative effect: the potential for unfair advantage to a matrimonial litigant." Peranio v. Peranio, 280 N.J. Super 47, 56 (App. Div. 1995). The judge fully measured his findings that plaintiff "had been . . . subject to domestic violence at some . . . points during the marriage," and that the act that formed the basis for the TRO involved defendant's non-violent entrance into plaintiff's residence, in crafting the DJOD's parenting-time child transfer provision. He explained the provision was "intended to foster a belief . . . [that] transporting [Gideon] is facilitating and encouraging the child's parenting time with the other party." The judge's stern rebuke to the parties during the FRO hearing evidences his concern about the need for such facilitation and encouragement. The judge also perceptively deduced that despite plaintiff's professed fear of having face-to-face contact with defendant during drop-off at his residence, she had no problem having such contact at her own residence. Further, the judge: provided the option to utilize third-parties for parenting-time transportation; noted four-year-old Gideon could "walk freely from one party to another during exchanges" obviating face-to-face contact; and that "the parties can . . . massage exact logistics (of how they can best implement the DJOD) regarding the exchange, through the parent coordinator."

12

The judge's reasoned analysis of the parenting-time exchange provisions also disprove plaintiff's contention that those terms "essentially eviscerate[e] any meaningful effect of the civil restraints by compelling consistent in-person contact between the parties as [Gideon] is not of sufficient age" to be dropped off curbside. The DJOD incorporated some provisions from the parties' consent order for civil restraints – entered on January 14, 2016. Paragraph 7 of the DJOD provides:

> The parties shall only communicate with each other about the parties' child, [Gideon,] by email or text, except in the case of emergency. The parties shall have no in-person, direct contact with the other party . . . except in passing as it relates to parenting time exchanges and except as deemed necessary by the parent coordinator for any joint in-person sessions with the coordinator. The parties shall have no oral communications except in emergency related to [Gideon] and except as provided herein.

The judge concluded, "This incidental contact could occur regardless of whose residence the parenting time exchanges occur." His goal in providing such incidental and limited contact – scheduled to occur approximately six times per month – to facilitate and encourage the child's parenting time with the other party was within his discretion in providing for Gideon's best interests and was wholly consistent with his factual findings regarding the parties' domestic violence history.

A-5291-17T3

The judge also fully addressed plaintiff's contentions regarding her work schedule, finding that plaintiff works from home four days per week and goes to her office only once; and the parties live no more than twenty minutes apart. The judge also noted that the use of third-parties "should not . . . seemingly be necessary based on plaintiff's trial testimony where she essentially depicted her nanny as doing more household responsibilities than child[-]care responsibilities. . . . In other words, if plaintiff is able to essentially tend to the majority of [Gideon's] needs, which is ostensibly what she testified to, even when working, it stands to reason that she can also contribute to pick[-]up and drop[-]off."

We determine the balance of plaintiff's arguments regarding the judge's denial of her reconsideration motion to be without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E). We add only that the use of third-parties was merely a convenience for the parties. We further reject plaintiff's claim that a civil consent order can be dissolved or modified only on good cause and after consideration of the factors set forth in Carfagno v. Carfagno, 288 N.J. Super. 424, 434-35 (Law Div. 1995). A civil consent order does not undergo the rigorous analysis before entry as does a restraining order entered under the Act. And more so than consent orders, orders of protection under the Act "are

14                                                                    A-5291-17T3

orders of the court, not orders of the victims." State v. Washington, 319 N.J. Super. 681, 687 (Law Div. 1998) (quoting State v. Townsend, 538 N.E.2d 1297, 1299 (Ill. App. Ct. 1989)). The judge was within his authority to incorporate portions of the civil restraints, as modified, to further the custody and parenting-time provisions he determined to be in Gideon's best interests following a thirteen-day trial. Beck v. Beck, 86 N.J. 480, 497 (1981) ("The paramount consideration in child custody cases is to foster the best interests of the child.").

We do not find that the judge abused his discretion in denying plaintiff's motion for reconsideration or that he decided the motion on a palpably incorrect basis. His rational and thorough explanation verified his consideration and appreciation of the significant, probative evidence.

III

Finally, we consider defendant's cross-appeal of the judge's denial of attorney's fees in connection with the motion for reconsideration, which we review with deference and will disturb "only on the rarest occasions, and then only because of a clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995); see also Eaton v. Grau, 368 N.J. Super. 215, 225 (App. Div. 2004). The judge, in his amplified decision of September 4, 2018, analyzed defendant's request under the factors set forth in Williams v. Williams, 59 N.J. 229, 233

15

(1971)[7] and <u>Rule</u> 5:3-5(c).[8]  We find no reason to disturb his ruling; the denial

of fees to defendant was not an abuse of discretion and we affirm the denial for

the reasons set forth in the judge's comprehensive written decision.[9]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7]  The factors set forth in <u>Williams</u> include the parties' needs, financial ability to pay and good faith in instituting or defending the action.  <u>Williams</u>, 59 N.J. at 233.

[8]  To determine whether and to what extent a fee award is appropriate, courts must consider:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [<u>R.</u> 5:3-5(c).]

[9]  The judge also analyzed the reasonableness of the fees under <u>RPC</u> 1.5(a)'s factors.  In that no fee was awarded defendant, we need not consider those factors.

A-5291-17T3